<div style="writing-mode: vertical">**United States District Court**
For the Northern District of California</div>

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JUNIPER NETWORKS, INC.,

        Plaintiff,

   v.

ALTITUDE CAPITAL PARTNERS, L.P. and
SECURITY RESEARCH HOLDINGS LLC,

        Defendants.

                           /

No. C 09-03449 JSW

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS**

Now before the Court are the motions to dismiss for lack of subject matter jurisdiction and

personal jurisdiction, or in the alternative to transfer, filed by Altitude Capital Partner, L.P.

("Altitude") and Security Research Holdings LLC ("SRH") (collectively, "Defendants"). Having

carefully reviewed the parties' papers, the relevant legal authority, and having good cause, the Court

hereby DENIES the motion to dismiss for lack of personal jurisdiction, but GRANTS the motion to

dismiss for lack of subject matter jurisdiction.[1]

**BACKGROUND**

**I.     Factual Background.**

Plaintiff Juniper Networks, Inc. ("Juniper") is a computer networking company. It was

---

[1]    The Court finds that, based on the sworn affidavits submitted by Defendants, the outstanding
discovery of nearly 2,600 documents which are the subject of an unresolved discovery dispute do not
contain information relevant to bolster Plaintiff's opposition to this motion to dismiss. Accordingly,
the motion to continue the adjudication of the motion is DENIED.

**United States District Court**
**For the Northern District of California**

1    incorporated in Delaware, but has its principal place of business in Sunnyvale, California.

2    (Declaration of Azar Mouzari ("Mouzari Decl."), Ex. 9 at ¶ 4.)  Defendant Altitude is a limited

3    partnership formed under the laws of Delaware that has its principal place of business in New York.

4    (Declaration of William A. Marino ("Marino Decl."), at ¶ 3.)  Altitude is an "investment firm" that

5    purchased an interest in the patents that are at issue in this litigation.  (Mouzari Decl., Ex. 2 at 98:7-

6    25.)  Defendant SRH is an LLC formed under the laws of Delaware that has its principle place of

7    business in New York.  (Marino Decl. at ¶ 2.)  Altitude and SRH share many of the same employees,

8    and most of SRH's shareholders are affiliated with Altitude.  (Mouzari Decl., Ex. 12 at 111:3-113-

9    5.)  However, Altitude and SRH "observe all corporate formalities" towards each other.  (Marino

10   Decl. at ¶ 4.)  Enhanced Security Research ("ESR") is a limited liability company formed under the

11   laws of Texas; its principle place of business is in Berkeley, California.  (Mouzari Decl., Ex. 13 at 1,

12   § 7.1.)  ESR exists to "monetize" the two patents that are at issue in this litigation.  (*Id.*, Ex. 2 at

13   19:23.)

14         The patents at issue in this action are U.S. Patent Nos. 6,119,236 and 6,304,975 (collectively,

15   "the patents-in-suit").  Peter Shipley invented both of the patents-in-suit.  (Pl's Statement of Recent

16   Decision ("SRD"), Ex. A at 2.)  Thereafter, in July 2007, Mr. Shipley assigned the rights, title and

17   interest in the patents-in-suit to ESR.  (*Id.*)

18         Through a contract entitled "Purchase Agreement," ESR assigned to Defendant SRH many

19   of its rights to the patents-in-suit.  (*See generally* Mouzari Decl., Ex. 13.)  Under the terms of the

20   Purchase Agreement, ESR "retained title to the patents-in-suit" but gave SRH "all substantial rights

21   to the patents-in-suit," including exclusionary and enforcement rights.  (SRD at 9; Mouzari Decl.,

22   Ex. 13 at § 2.3.)

23         The Purchase Agreement was preceded by negotiations and contracts between Altitude and

24   SRH.  On or around September 9, 2008, Altitude sent ESR a "Term Sheet" agreement by which

25   Altitude committed to provide ESR with $1,000,000 in funding for a lawsuit that ESR had initiated

26   against Juniper regarding the patents-in-suit.  (Mouzari Decl., Ex. 14 at 1.)  In exchange, Altitude

27   was to receive a large part of any damages that ESR recovered from its lawsuit against Juniper.  (*Id.*)

28   On October 2, 2008, Altitude sent ESR a letter that addressed the proposed terms of an agreement

2

1   whereby ESR was to sell to Altitude certain rights to the patents-in-suit.  (*See id.*, Ex. 15 at Ex. A.)

2   On or around January 20, 2009, ESR entered the Purchase Agreement that sold many of its rights to

3   the patents-in-suit.  (*See id.*, Ex 15.)  Rather than entering this agreement with Altitude, ESR entered

4   the Purchase Agreement with SRH.  (*See id.*)  Altitude is the "parent entity" of SRH.  (*Id.*, Ex. 16 at

5   Ex. A-2.)  After ESR entered the agreement with SRH, Altitude executed a "Guarantee" which

6   assured ESR that SRH would make all payments to ESR that were required by the terms of the

7   Purchase Agreement.  (*See id.*)

8   **II.     Procedural History**.

9           Juniper filed a complaint against Altitude and SRH in this district on July 27, 2009.

10  (Complaint at 1.)  Juniper's complaint seeks a declaratory judgment that Juniper has not infringed

11  the patents-in-suit.  (Complaint at 6:6-8.)  On August 27, 2010, Defendants filed the instant motion,

12  which alleges that: (1) the Court does not have personal jurisdiction over SRH or Altitude; (2) the

13  Court lacks subject matter jurisdiction over Altitude; and (3) even if the Court has personal and

14  subject matter jurisdiction over Defendants, the Court should transfer this action to the District of

15  Delaware.

16          This declaratory judgment action is factually and procedurally intertwined with an action

17  initiated by ESR in the Eastern District of Texas, *Enhanced Sec. Research v. Juniper Networks, Inc.*,

18  Civil Action No. 2:07-CV-481-TJW-CE, in which ESR accused Juniper of infringing the patents-in-

19  suit.  Juniper filed a motion seeking transfer of that action to the Northern District of California.

20  (Mouzari Decl., Ex. 4.)  On October 23, 2009, Judge T. John Ward of the Eastern District of Texas

21  granted the transfer, but transferred the action to the District of Delaware rather than to the Northern

22  District of California.  (*Id.*, Ex. 4 at 2.)  Thereafter, the District of Delaware dismissed ESR's lawsuit

23  against Juniper on the grounds that ESR lacked standing to sue on its own because it had sold the

24  enforcement rights to the patents-in-suit to SRH via the Purchase Agreement.  (*See id.*, Ex. 7 at 8.)

25  On July 15, 2010, ESR and SRH filed a complaint in the District of Delaware against Juniper

26  alleging that Juniper infringed the patents-in-suit.  (*Id.*, Ex. 9.)

27

28

**United States District Court**
For the Northern District of California

3

United States District Court
For the Northern District of California

**ANALYSIS**

**I.     The Court has Personal Jurisdiction Over Defendants.**

Defendants argue that this Court does not have personal jurisdiction over them because they do not have the requisite minimum contacts with this judicial district.  Federal Rule of Civil Procedure 12(b)(2) governs dismissal for lack of personal jurisdiction.  Because this is a patent case, the Court applies Federal Circuit precedent to determine whether it has personal jurisdiction over Defendants.  *HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1306 (Fed. Cir. 1999).  A court has personal jurisdiction over a defendant where: (1) asserting jurisdiction over the defendant does not violate the defendant's due process rights, and (2) the governing long-arm statute permits the court to exercise jurisdiction over the defendant.  *See Dainippon Screen Mfg. Co. v. CFMT, Inc.*, 142 F.3d 1266, 1269-70 (Fed. Cir. 2000).  California's long arm statute allows courts to assert personal jurisdiction over defendants "on any bases not inconsistent with the Constitution ... of the United States."  Cal. Code Civ. Proc. § 410.10; *see also, e.g.*, *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001).  California's long arm statute is coextensive with the Constitution, and therefore the Court may assert personal jurisdiction over Defendants unless doing so would violate Defendants' due process rights.

The Supreme Court set forth the due process standard in *International Shoe v. Washington*, in which it held that "due process requires only that ... [the Defendant] have certain minimum contact with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  326 U.S. 310, 316 (1945).  Therefore, the Court uses a two-step analysis to examine first whether Defendants have the requisite minimum contacts with California, and second whether haling Defendants into this Court would offend traditional notions of fair play and substantial justice.

"Under the 'minimum contacts' test, a defendant may be subject to either specific jurisdiction or general jurisdiction."  *LSI Industries, Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000).  Here, Juniper argues that Defendants' contacts with California support both general and specific jurisdiction.  Defendants argue that their contacts with California are insufficient to support jurisdiction under either of these bases.

4

**United States District Court**
For the Northern District of California

### A.     The Court Does Not Have General Jurisdiction Over Defendants.

"General jurisdiction" refers to a court's ability to exercise personal jurisdiction over a defendant in any action, including actions unrelated to the defendant's contacts with the state in which the court sits. *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 415 (1984). Juniper argues that this Court may exercise general jurisdiction over SRH because SRH has extensive contacts with California. In *Perkins v. Benguet Consol. Mining Co.*, the Supreme Court held that a federal court can exercise general jurisdiction over a defendant if that defendant has "continuous and systematic" contacts with the forum state. 342 U.S. 437, 447-49 (1952) (upholding general jurisdiction because defendant carried on a "continuous and systematic, but limited, part of its general business" in the forum state). The standard for meeting this "continuous and systematic" requirement is "fairly high" and requires that the defendant's contacts be of the sort that approximate physical presence. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1018 (Fed. Cir. 2009); *see also Campbell Pet Co. v. Piale*, 542 F.3d 879, 883-84 (Fed. Cir. 2008). There is not a "specific test to follow" when determining whether a defendant's contacts are continuous and systematic, and courts must instead "look at the facts of each case to make such a determination." *LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000).

Juniper argues that SRH is subject to general jurisdiction in California because SRH has engaged in "ongoing, collaborative activities" with ESR, which is a California-based entity.[2] These activities are centered on a purchasing agreement between ESR and SRH by which SRH purchased rights to intellectual property owned by ESR. (*See* Mouzari Decl., Ex. 13 at Art. 2.) Juniper argues that this contract led to extensive California contacts for SRH, such as weekly meetings with ESR. However, these are not the sort of continuous and systematic contacts that give rise to general jurisdiction. Rather, the Supreme Court has "made[] clear that purchases and related trips, standing alone, are not a sufficient basis for a State's assertion of [general] jurisdiction." *Helicopteros*, 466 U.S. at 417.

Juniper also claims that this Court has general jurisdiction over Altitude. Juniper argues that

---

[2] ESR is a limited liability company formed under the laws of Texas. (Mouzari Decl., Ex. 13 at 1.) However, its principle place of business is in Berkeley, California. (*See id.*, § 7.1.)

**United States District Court**
For the Northern District of California

1   Altitude was extensively involved in the transaction between ESR and SRH, notwithstanding

2   Altitude's efforts to obscure its involvement.  As discussed, even if Altitude was extensively

3   involved in the purchasing agreement between ESR and SRH, that agreement alone—which

4   essentially amounted to a sale of patents—is insufficient to support general jurisdiction.  *See id.*  In

5   addition to the ESR-related contacts, Juniper argues that Altitude often travels to California to meet

6   with potential clients, and has entered into an agreement with a company based in California.

7   Although Altitude has engaged in business meetings in California with the goal of doing business,

8   these contacts are not of a "nature and extent" that amount to a finding of general jurisdiction.  In

9   *Campbell Pet Company*, for example, the district court lacked general jurisdiction even though the

10  defendant had made twelve sales to customers in the forum state over a period of eight years.  542

11  F.3d at 883.  Similarly, the Supreme Court in *Helicopteros* held that the district court lacked

12  jurisdiction over the defendant where the defendant had sent its chief executive officer to the forum

13  state for business negotiations, and had sent its employees to the forum state for training.  *See*

14  *Helicopteros*, 466 U.S. at 416-19.  In light of these precedents, based on this record, the Court finds

15  that it does not have general jurisdiction over Altitude.

16              **B.        The Court Has Specific Jurisdiction Over Defendants.**

17              Juniper argues that even if this Court lacks general jurisdiction over Defendants, it

18  nevertheless has specific jurisdiction to adjudicate Juniper's claims arising out of Defendants'

19  contacts with California.  "[E]ven where general jurisdiction is not available, specific jurisdiction

20  may be exercised by a district court in the forum state" if doing so would not violate due process.

21  *Campbell Pet Co.*, 542 F.3d at 884.  For specific jurisdiction over a defendant to be proper, the

22  defendant must have "certain minimum contacts with" the forum.  *Int'l Shoe*, 326 U.S. at 316.  The

23  "minimum contacts" standard requires that the defendant engaged in "some act by which the

24  defendant purposefully availed himself of the privilege of conducting activities within the forum

25  state, thus invoking the benefits and protections of its laws."  *Hanson v. Denckla*, 357 U.S. 235, 253

26  (1958).  The requisite minimum contacts are present "where the defendant 'deliberately' has

27  engaged in significant activities within a state, ... or has created 'continuing obligations' between

28  himself and residents of the forum."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985)

6

1    (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984), and *Travelers Health Ass'n v.*

2    *Virginia*, 399 U.S. 643, 648 (1950)) (internal citations omitted).  On the other hand, random,

3    fortuitous, or attenuated connections with the forum state fall short of the minimum contacts

4    threshold.  *Id.* at 475.           The Federal Circuit uses a three-part test to apply the minimum

5    contacts standard set forth by the Supreme Court.  *See, e.g.*, *Akro Corp. v. Luker*, 45 F.3d 1541,

6    1545-46 (Fed. Cir. 1995); *Breckenridge Pharms., Inc. v. Metabolife Labs., Inc.*, 444 F.3d 1356, 1363

7    (Fed. Cir. 2006).  First, the defendant must have "purposefully directed its activities at residents of

8    the forum."  *Breckenridge*, 444 F.3d at 1363.  Second, the claim must arise out of or relate to those

9    activities.  *Akro*, 45 F.3d at 1545-46.  Lastly, the exercise of personal jurisdiction must be

10   "reasonable and fair."  *Breckenridge*, 444 F.3d at 1363.

11              **1.       The Court Has Specific Jurisdiction Over Juniper's Claims Against SRH.**

12             Juniper first argues that the Court has specific jurisdiction over SRH because: (1) SRH

13   entered a contract with ESR (a California-based entity) that contemplated an ongoing relationship,

14   and (2) this action arises out of that contractual relationship.  William Marino, the person most

15   knowledgeable to speak on behalf of SRH, testified that SRH has "a contractual agreement with

16   ESR that says ... 'we [SRH] get to direct you [ESR] to make certain decisions.'"  (Mouzari Decl.,

17   Ex. 11 at 13:4-11.)  Moreover, SRH has exercised this right to direct: when asked whether SRH had

18   "participated in any negotiations between ESR and a potential licensee," Marino explained that he

19   had personally done so while "acting as a kind of director of SRH and, wearing a kind of

20   management cap for ESR."  (*Id.* at 13:23-14:4; *see also id.* at 16:17-22 (Marino testifying that he

21   "largely" manages ESR's litigation).)  The contacts between SRH and ESR are not one-time

22   incidents, but rather long-term collaborations pursuant to which representatives of SRH and ESR

23   "participate in weekly calls" with each other.  (*Id.* at 21:1-5.)  Due to the extensive interactions

24   between SRH and ESR (and SRH's substantial control of ESR), it follows that SRH's contacts with

25   California were not random, fortuitous, or attenuated.  Indeed, the Supreme Court has expressly held

26   that "parties who ... create continuing relationships and obligations with citizens of another state are

27   subject to regulation and sanctions in the other State."  *Burger King*, 471 U.S. at 473 (quoting

28   *Travelers Health*, 339 U.S. at 467) (internal quotation marks omitted).  Here, SRH entered a contract

United States District Court
For the Northern District of California

7

**United States District Court**
For the Northern District of California

1  with a California entity that granted them the rights to play an active and continuing role in that

2  California entity's decision-making processes, and in doing so created contacts with California that

3  satisfy the minimum contacts test.

4  In actions where the plaintiff seeks a declaratory judgment that it has not infringed the

5  defendant's rights to the patents-in-suit, Federal Circuit precedent holds that personal jurisdiction

6  over the defendant is proper only if the defendant attempted to enforce the patent.   Namely, the

7  Federal Circuit has "consistently required the defendant to have engaged in 'other activities' that

8  relate to the *enforcement* or the *defense of the validity* of the relevant patents." *Avocent Huntsville*

9  *Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1334 (Fed. Cir. 2008) (quoting *Akro*, 45 F.3d at 1547)

10  (emphasis in original).  SRH has engaged in actions that fall within this description.  Most notably,

11  SRH entered an agreement with ESR whereby SRH was to provide financing for legal fees incurred

12  in connection with ESR's pending lawsuit to enforce its rights to the patents-in-suit against Juniper.

13  (*See* Mouzari Decl., Ex. 13 at § 2.3(a)).  Therefore, the enforcement activities embodied in SRH's

14  Purchase Agreement with ESR demonstrate that SRH meets the minimum contacts standard that the

15  Federal Circuit imposes in declaratory judgment patent actions.

16  For this Court to have jurisdiction over SRH,  Juniper's claims must arise out of SRH's

17  contacts with California.  *See Akro*, 45 F.3d at 1545-46.  In declaratory judgment patent actions, this

18  inquiry focuses on whether the plaintiff's lawsuit "arises out of or relates to the activities of the

19  defendant patentee in enforcing the patent or patents in suit." *Avocent Huntsville*, 552 F.3d at 1332.

20  Here, Juniper filed this action based on its stated belief that Defendants will sue Juniper for patent

21  infringement.  SRH would not have a right to make "certain decisions" regarding the patents-in-suit

22  without its purchasing agreement with ESR.  (Mouzari Decl., Ex. 11 at 13:4-11; *see also* Ex. 13 at

23  Art. 2.)  Accordingly, Juniper would not have a reason to expect a lawsuit from SRH (and to file this

24  action based on that apprehension) if SRH did not have the right to control ESR.  Because SRH's

25  control of ESR and the patents-in-suit were acquired as a result of the contract with ESR, and

26  because that contract and related conduct created "minimum contacts" between SRH and California,

27  it follows that Juniper's claims arise out of SRH's contacts with California.

28

8

**United States District Court**
For the Northern District of California

### 2.   The Court Has Specific Jurisdiction Over Juniper's Claims Against Altitude.

Juniper argues that Altitude has ties with California that satisfy the minimum contacts standard because: (1) SRH is Altitude's alter ego, and therefore SRH's contacts with California are imputed to Altitude, and (2) Altitude had substantial contacts with ESR (and thus California) that are independent of its relationship with SRH.  Although SRH rather than Altitude was the signatory to the contract with ESR, Altitude had substantial dealings with ESR during the period preceding the contract's execution that independently amount to minimum contacts.  The record demonstrates that Altitude prepared a "Term Sheet" describing the proposed terms for an arrangement between Altitude and ESR.  (*See id.*, Ex. 14.)  It was by this arrangement that Altitude was to fund litigation to enforce ESR's patents, and in exchange was to receive a substantial share of the damages recovered through that litigation.  (*See id.*)  The relationship between Altitude and ESR embodied in the Term Sheet was not a random or fortuitous connection: Altitude purposely reached out to an entity with its principle place of business in California to take advantage of a lucrative business opportunity.  The Term Sheet expressed Altitude's commitment to make "litigation expense disbursements" in an ongoing case.  (*Id.* at 1.)  In addition to the Term Sheet, Altitude also sent ESR a Letter of Intent indicating Altitude's "good faith intention to proceed with the proposed transaction"; the "proposed transaction" would give Altitude "control over all material decisions ... regarding assertion of [ESR's] IP."  (*Id.*, Ex. 15 at ¶ V to Ex. 1.)

The agreements and negotiations between Altitude and ESR implicate the rule that  "parties who ... create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State." *Burger King*, 471 U.S. at 473 (quoting *Travelers Health*, 339 U.S. at 467) (internal quotation marks omitted).  While the negotiations between ESR and Altitude were essentially "agreements to agree" to what ultimately emerged as the final licensing agreement between SRH and ESR, preliminary negotiations such as these may nevertheless amount to minimum contacts.  In *Burger King*, the Supreme Court held that the jurisdictional significance of a contractual relationship with a party residing in the forum state is broader than the contract itself. *See id.* at 478-79.  The broad inquiry focuses on "*prior negotiations*

9

**United States District Court**
For the Northern District of California

1    and contemplated future consequences, along with the terms of the contract and parties' actual

2    course of dealing." *Id.* at 479 (emphasis added).  Here, as evidenced by Altitude's extensive

3    negotiations with ESR that ultimately culminated in the Purchase Agreement, Altitude has contacts

4    with California that are sufficient to support this Court's exercise of personal jurisdiction.

5            These minimum contacts alone do not end the inquiry because Juniper's claims must also

6    arise out of SRH's contacts with California.  *See Akro*, 45 F.3d at 1545-46.  Juniper brought this

7    declaratory judgment action based on its belief that "Altitude and SRH ... plan to themselves assert

8    in the immediate future that Juniper's network security products infringe the patents-in-suit."

9    (Complaint at ¶ 17.)  Juniper's belief is based on the Term Sheet defining the terms of the proposed

10   agreement between Altitude and ESR, in which Altitude committed to funding a lawsuit against

11   Juniper.  (*See* Mouzari Decl., Ex. 14 at 1.)  Therefore, Juniper's claims arise directly from Altitude's

12   contacts with ESR, a California-based entity.  Because Altitude's direct contacts with California

13   satisfy the minimum contacts requirement, the Court declines to decide whether the alleged alter ego

14   relationship between SRH and Altitude provides an independent basis for jurisdiction.

15           **3.      This Court's Assertion of Jurisdiction Over Defendants Would Not Offend
                       Traditional Notions of Fair Play and Substantial Justice.**

16

17           Even where a defendant has minimum contacts with the forum state, asserting jurisdiction

18   may still be unreasonable if doing so would be unfair.  *See, e.g.*, *Patent Rights Prot. Grp., LLC v.*

19   *Video Gaming Techs., Inc.*, 603 F.3d 1364, 1369 (Fed. Cir. 2010).  To determine whether it is fair to

20   exercise jurisdiction, the Supreme Court has instructed courts to determine whether "the assertion of

21   jurisdiction would comport with 'fair play and substantial justice.'"  *Burger King*, 471 U.S. at 476

22   (quoting *Int'l Shoe*, 326 U.S. at 320).  Where, as here, a defendant has directed its activities at

23   residents of the forum state, the defendant cannot defeat jurisdiction based on fairness considerations

24   unless it "present[s] a compelling case that the presence of some other considerations would render

25   jurisdiction unreasonable."  *Id.* at 477.  This standard is met only in "rare situation[s] in which the

26   plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated

27   that they are clearly outweighed by the burden of subjecting the defendant to litigation within the

28   forum."  *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994).

10

**United States District Court**
For the Northern District of California

1  Courts review several considerations to determine whether a particular case presents one of these

2  "rare situations."  Those considerations are: (1) the burden on the defendant; (2) the interests of the

3  forum state; (3) plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in

4  efficiently resolving controversies; and (5) the shared interest of all states in furthering substantive

5  social policies.  *See Burger King*, 471 U.S. at 477; *Autogenomics*, 566 F.3d at 1025.

6         Defendants argue that they would be substantially burdened by litigating in this judicial

7  district because they do not have offices, operations, or employees in California.  This argument,

8  however, is unpersuasive in light of the fact that Defendants have proven themselves financially

9  capable of engaging in protracted negotiations with California-based entities, and have taken several

10  business trips to California.  (*See, e.g.*, Mouzari Decl., Ex. 11 at 9:3-14; Ex. 12 at 69:23-73:20.)

11         Defendants emphasize the fact that a different action filed by Juniper in this district was

12  dismissed on the grounds that the court lacked personal jurisdiction.  That holding, however, is

13  factually distinguishable from this action and therefore has no bearing on whether this Court's

14  exercise of jurisdiction would violate "fair play."  In that action, Juniper "argu[ed] that the

15  [defendant's] act of filing a lawsuit against a California resident ... is sufficient to make a prima facie

16  showing that [defendant] has purposefully availed itself of the privilege of conducting activities

17  within the forum state."  *Juniper Networks, Inc. v. SSL Servs., Inc.*, *LLC*, No. C 08-5758 SBA, 2009

18  WL 2837266, at *4 (N.D. Cal. Nov. 16, 2009) (quoting *Avocent Huntsville*, 552 F.3d at 1329)

19  (internal quotation marks omitted).  In that action, the defendant's only contact with California

20  (aside from suing a California resident) was sending cease and desist letters which, the court held,

21  could not constitute minimum contacts as a matter of law.  *See id.*  Here, in sharp contrast,

22  Defendants have several contacts with California that, as discussed above, collectively satisfy the

23  minimum contacts standard.[3]

24         Regarding the interstate judicial system's interest in efficiently resolving controversies,

25

26        [3]   Relatedly, Defendants argue that Juniper's minimum contacts argument is based largely on
ESR's contacts with California, rather than the contacts of Defendants themselves. ESR's contacts, they
27  argue, are irrelevant to whether the Court has personal jurisdiction over Defendants.  As discussed
above, however, both SRH and Alpine have sufficient contacts of their own with California.  While
28  many of these contacts are related to their relationship with ESR, the contacts are based on their
reaching out to and doing business with ESR, rather than on ESR's unilateral activities.

1   Defendants assert that there are related cases pending in the District of Delaware and that it would

2   be more efficient to allow that court to decide the issues.  However, even assuming that adjudicating

3   this case in the District of Delaware would promote efficiency, the Court finds that this efficiency

4   interest alone is not a "compelling" reason to dismiss based on lack of personal jurisdiction.

5          Accordingly, Defendants have failed to meet their burden of presenting a "compelling"

6   argument that the Court's exercise of jurisdiction would be unreasonable.  Therefore, the Court

7   denies Defendants' motion to dismiss for lack of personal jurisdiction.

8   **II.      The Court Lacks Subject Matter Jurisdiction Over Defendants.**

9          **A.      "All the Circumstances" Must Demonstrate a Case or Controversy Between the
            Parties in Order for the Court to Have Subject Matter Jurisdiction.**

10

11         Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court may dismiss a

12  complaint when it lacks subject matter jurisdiction.  The Court has "an independent obligation to

13  determine whether subject-matter jurisdiction exists, even in the absence of a challenge from either

14  party." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).  In patent suits, Federal Circuit

15  precedent governs the Court's determination of whether it has subject matter jurisdiction. *See*

16  *Minnesota Mining & Mfg. Co. v. Norton Co.*, 929 F.2d 670, 672 (Fed. Cir. 1991).

17         The Federal Declaratory Judgment Act provides that "[i]n an actual case or controversy

18  within its jurisdiction ... any Court of the United States ... may declare the rights and other legal

19  relations of any interested party facing such declaration."  28 U.S.C. § 2201(a).  Accordingly, "the

20  Declaratory Judgment Act requires an actual case or controversy between the parties before a federal

21  court can constitutionally assume jurisdiction." *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*,

22  824 F.2d 953, 955 (1987) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-241 (1937)).

23  The phrase "actual case or controversy" as used in the Act "refers to the same 'Cases' and

24  'Controversies' that are justiciable under Article III" of the Constitution. *Medimmune, Inc. v.*

25  *Genentech, Inc.*, 549 U.S. 118, 127 (2007).  This jurisdictional inquiry is concerned with the facts

26  that exist when the Plaintiff originally filed its complaint, and if there was not a case or controversy

27  at the time of filing, subsequent events cannot make subject matter jurisdiction proper. *See*

28  *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.2d 1377, 1384 (Fed. Cir. 2010).  Here,

**United States District Court**
For the Northern District of California

12

**United States District Court**
For the Northern District of California

1    Alpine argues that there is not a "case or controversy" between it and Juniper because Alpine does

2    not have standing to sue Juniper for patent infringement.

3          In *Medimmune*, the Supreme Court held that to decide whether there exists a case or

4    controversy, courts must determine "whether the facts alleged, under all the circumstances, show

5    that there is a substantial controversy, between parties having adverse legal interests, of sufficient

6    immediacy and reality to warrant ... a declaratory judgment." *Medimmune*, 549 U.S. at 127 (quoting

7    *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  Therefore, "in a declaratory

8    judgment action, 'all the circumstances' must demonstrate that a justiciable Article III 'controversy'

9    exists." *Teva Pharm. USA, Inc. v. Novartis Pharm., Inc.*, 482 F.3d 1330, 1337 (Fed. Cir. 2007).  The

10   Federal Circuit has emphasized that "there is ... no facile, all-purpose standard" for determining

11   whether an Article III controversy exists.  *Cat Tech, LLC v. Tube Master, Inc.*, 528 F.3d 871, 879

12   (Fed. Cir. 2008).  Rather, "the difference ... is necessarily one of degree, and it would be difficult, if

13   it would be possible" to craft a precise test to determine whether an Article III controversy exists in

14   any given case.  *Md. Cas. Co.*, 312 U.S. at 273.  Accordingly, the Court must calibrate its analysis to

15   the facts of this particular case to determine whether "all the circumstances" demonstrate a case or

16   controversy.  *Medimmune*, 549 U.S. at 127.

17          **B.      There Was Not a Case or Controversy Between Juniper and Defendants at the**
                      **Time Juniper Initiated This Action.**

18

19          The alleged controversy between Juniper and Altitude cannot be of "sufficient immediacy

20   and reality" unless Altitude has title or rights to the patents-in-suit such that it has standing to sue

21   Juniper.  *See* 25 U.S.C. § 281.  This is because, if Altitude lacks standing to enforce the patents,

22   Juniper's fear of suit would be neither immediate nor grounded in reality.  Here, Juniper argues that

23   the Court has subject matter jurisdiction over SRH, which should be imputed to Altitude because

24   Altitude is SRH's alter ego.  Although Juniper asserts that Defendants have "effectively conceded"

25   that the Court has subject matter jurisdiction over SRH, the Court is required to independently

26   determine whether it has subject matter jurisdiction.  *See Arbaugh*, 546 U.S. at 514.  Therefore, the

27   Court must determine whether it has subject matter jurisdiction over SRH before it can reach the

28   question of whether Altitude is the alter ego of SRH.

13

**United States District Court**
For the Northern District of California

1    Juniper argues that the doctrine of collateral estoppel dictates that SRH has standing to sue

2    Juniper.  (*See* Opp. at 14:25-15:20.)  Collateral estoppel "bars successive litigation of an issue of

3    fact or law actually litigated and resolved in a  ... prior judgment, even if the issue recurs in the

4    context of a different claim."  *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire*

5    *v. Maine*, 532 U.S. 742, 748 (2001)) (internal quotation marks omitted).  A litigant will be

6    collaterally estopped "only '[w]hen an issue of fact or law is actually litigated and determined by a

7    valid and final judgment, and the determination is essential to the judgment.'"  *Arizona v.*

8    *California*, 530 U.S. 392, 414 (2000) (quoting *Restatement (Second) of Judgments* § 7, at 250

9    (1982)) (alteration in original).  Here, SRH has standing to sue Juniper based on the doctrine of

10   collateral estoppel.

11       In a patent infringement action filed by ESR against Juniper in the District of Delaware, the

12   Delaware court found that "Security Research Holdings [possesses] all substantial rights to the

13   patents-in-suit." (Mouzari Decl., Ex. 7 at 8.)  In that litigation, the issue before the District of

14   Delaware was whether ESR had standing to sue for infringement of the patents-in-suit without SRH

15   also being named as a plaintiff.  (*Id.* at 7.)  The Delaware court found that ESR did not have standing

16   because SRH (Defendant in this action) possessed the enforcement rights to the patents-in-suit.  (*Id.*

17   at 8.)  Therefore, the patents-in-suit could not be enforced unless SRH were a plaintiff.  Here,

18   likewise, the Court must determine whether SRH has standing to sue Juniper for patent

19   infringement—if SRH does not have standing there would not be a dispute of "immediacy and

20   reality" that would permit Juniper to bring an action under the Declaratory Judgment Act.

21   Therefore, the issue before the Court (i.e., whether SRH has standing to enforce the patents-in-suit)

22   is identical to the issue already decided by the Delaware court.  The Delaware court's finding that

23   SRH possesses all substantive rights to the patents-in-suit demonstrates that SRH has standing to

24   enforce those rights. (*See id.* at 8-11.)  Therefore, the Delaware court's decision requires this Court

25   to find that SRH has standing to sue to enforce the patents-in-suit.  *See Morrow v. Microsoft Corp.*,

26   499 F.3d 1332, 1339 (Fed. Cir. 2007) (citing *Prima Tek II LLC v. A-Roo Co.,* 222 F.3d 1372, 1377

27   (Fed Cir. 2000)) (noting that the assignee of all substantial rights to a patent has standing to sue for

28   infringement).  Because SRH has standing to sue Juniper, it follows that Juniper's apprehension of

14

**United States District Court**
For the Northern District of California

1    suit is immediate and real.

2         Having concluded that SRH has standing to sue Juniper, rendering the "immediacy and

3    reality" of suit requirement satisfied, the Court must determine whether there was a definite and

4    concrete dispute between parties with adverse legal interests at the time Juniper initiated this action.

5    *See Medimmune*, 549 U.S. at 127; *Hewlett Packard Co. v. Accelleron LLC*, 587 F.3d 1358, 1362

6    (Fed. Cir. 2009).  The record demonstrates that SRH signed a "Purchase Agreement" with ESR, and

7    that this contract states that SRH "may provide ... for legal and licensing fees relating to ... the

8    Action."  (Mouzari Decl., Ex. 13 at § 2.3(a).)  The contract defines the "Action" as a lawsuit

9    initiated by ESR against Juniper.  (*Id.* at § 1.1.)  The Purchase Agreement also contains a subsection

10   in which the parties stipulate that SRH is to have "the exclusive right" to all litigation relating to the

11   patents-in-suit.  (*Id.* at § 2.3(c).)  In sum, the Purchase Agreement provides that SRH will fund and

12   control the litigation against Juniper on behalf of ESR.  Because SRH stands to benefit financially if

13   ESR wins damages from Juniper, it is clear that SRH and Juniper are parties with "adverse legal

14   interests." *See Medimmune*, 549 U.S. at 138*.*

15        However, even though SRH and Juniper have adverse legal interests, it does not follow that

16   there is a definite and concrete dispute between SRH and Juniper.  A "definite and concrete dispute"

17   means that the dispute is "appropriate to immediate and definitive determination [the parties'] legal

18   rights," as opposed to "an advisory opinion on a situation not ripe for litigation." *BP Chems. Ltd v.*

19   *Union Carbide Corp.*, 4 F.3d 975, 977-78 (Fed. Cir. 1993) (citing *Aetna Life Ins. Co.*, 300 U.S at

20   239-241), *abrogated on other grounds in Medimmune*, 549 U.S. at 132 n.17.  At the time Juniper

21   filed this action, SRH had used its controlling role in the litigation of ESR's patents to fund ESR's

22   lawsuit against Juniper.  On the other hand, SRH had not taken any actions that suggested it intended

23   to sue Juniper directly.  Indeed, "SRH ... ha[d] never threatened suit against Juniper and ha[d] never

24   even been in contact with Juniper" at the time Juniper initiated this declaratory judgment action.

25   (Marino Decl., ¶ 6.)  In short, SRH provided financial backing for ESR's lawsuit against Juniper in

26   accordance with its obligations expressed in the Purchase Agreement, but SRH had done nothing to

27   indicate that it would directly sue Juniper.  Because at the time Juniper initiated this action SRH had

28   neither explicitly nor implicitly threatened an enforcement action against Juniper, there was not a

1   "definite and concrete" dispute between SRH and Juniper.  *See Medimmune*, 549 U.S. at 127; *cf.*

2   *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods.,*

3   *Co.*, 473 U.S. 568, 580-81 (1985)) ("A claim is not ripe for adjudication if it rests upon contingent

4   future events that may not occur as anticipated, or indeed may not occur at all.") (internal quotation

5   marks omitted).  Accordingly, even though SRH has standing to sue Juniper, "all the circumstances"

6   do not demonstrate that at the time Juniper filed the complaint in this action there was a definite and

7   concrete dispute between SRH and Juniper.[4]  Therefore, the Court does not have subject matter

8   jurisdiction over these claims because there is no case or controversy between SRH and Juniper.

9          Based on its erroneous assumption that the Court has subject matter jurisdiction over SRH,

10   Juniper asserts that the Court also has subject matter jurisdiction over Altitude.  In support of this

11   argument, Juniper asserts that SRH's standing should be imputed to Altitude because "there is, as a

12   practical matter, no genuine distinction between Altitude and SRH."  (Opp. at 15:21.)  However,

13   whether Altitude is the alter ego of SRH is irrelevant because, as discussed above, the Court lacks

14   subject matter jurisdiction over SRH.

15          In addition to its alter ego-based argument, Juniper argues that the actions of Altitude itself

16   created an actual controversy between Juniper and Altitude, which gives the Court subject matter

17   jurisdiction over Altitude.  Namely, Juniper argues that Altitude created a controversy between it

18   and Juniper because Altitude was a party to the Funding Term Sheet, the Letter of Intent, and the

19   Guarantee, which, collectively, demonstrate that Altitude would play a role in enforcing the patents-

20

21          [4]  The fact that SRH sued Juniper *after* Juniper filed its complaint for a declaratory judgment
does not create a case or controversy between SRH and Juniper because the relevant inquiry is whether
a case or controversy existed at the time Juniper filed its complaint.  *See Benitec Australia, Ltd. v.*

22   *Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007).  When a patentee has already filed a complaint
against a declaratory judgment plaintiff, the existence of the lawsuit initiated by the patentee

23   demonstrates that there is a case or controversy between the declaratory judgment plaintiff and the
patentee.  *See Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 96 (2003) ("[If] a party has

24   actually been charged with infringement of the patent, there is, *necessarily*, a case or controversy
adequate to support jurisdiction of a complaint ... under the Act.").  However, the case or controversy

25   inquiry is unaffected by the patentee filing suit against the declaratory judgment plaintiff *after* the
plaintiff filed its complaint for declaratory judgment.  *See Innovative Therapies*, 599 F.3d at 1383-84.

26   In *Innovative Therapies*, the Federal Circuit affirmed the District of Delaware's ruling that the
patentee's post-complaint conduct of suing the declaratory judgment plaintiff did not make up for the

27   lack of a case or controversy that existed at the time that the declaratory judgment plaintiff filed its
complaint.  *See id.*  Like in *Innovative Therapies*, the fact that SRH initiated suit against Juniper on July

28   15, 2010 does not retroactively create a case or controversy that existed on July 27, 2009, when Juniper
filed its complaint in this declaratory judgment action.  (Mouzari Decl., Ex. 9 at 7; Complaint at 1.)

United States District Court
For the Northern District of California

1   in-suit against Juniper.[5]  This argument is unpersuasive because nowhere in these documents does

2   Altitude commit to joining the lawsuit against Juniper.  In the Term Sheet, Altitude proposed that it

3   would commit $1,000,000 to a funding facility that would assist ESR with out-of-pocket litigation

4   expenses.  (*See* Mouzari Decl., Ex. 14.)  In the Letter of Intent, Altitude expressed that it (or one of

5   its affiliates) intended to fund and manage litigation relating to enforcement of the patents-in-suit;

6   however, the Letter of Intent does not call for Altitude to itself enforce the patents-in-suit.  (*See id.*,

7   Ex. 15 at Ex. A.)  Likewise, the Guarantee commits Altitude to make payments to ESR pursuant to

8   the terms of the Purchase Agreement in the event that SRH fails to make these payments, but does

9   not commit Altitude to directly enforcing the patents-in-suit.  In short, Altitude's actions

10  demonstrate that it has a financial interest in enforcing the patents-in-suit against Juniper, but they

11  do not demonstrate that Altitude plans to sue Juniper directly.  Accordingly, there is not a case or

12  controversy between Altitude and Juniper within the meaning of the Declaratory Judgment Act.

13  **CONCLUSION**

14          For the foregoing reasons, the Court finds that although it has personal jurisdiction over

15  Defendants, it lacks subject matter jurisdiction over Defendants.  Therefore, Defendants' motion to

16  dismiss is hereby GRANTED.

17          **IT IS SO ORDERED.**

18  Dated:  December 13, 2010

19                                                                      JEFFREY S. WHITE
                                                                        UNITED STATES DISTRICT JUDGE

20

21

22          [5]  Altitude also argues that the Court should infer a case or controversy between Juniper and
    Altitude because Juniper presented Altitude with a covenant not to sue, which Altitude failed to execute.
    However, this covenant was not presented to counsel for Altitude until February 18, 2010, while
23  Altitude filed the complaint in this action on July 27, 2009. (Mouzari Decl., Ex. 22 (email from Laura
    Evans to Julia D. Klein dated Feb. 18, 2010).)  Because Juniper proposed the covenant not to sue after
24  Juniper had already initiated this action, Altitude's failure to sign the covenant is irrelevant to whether
    there was a case or controversy between Altitude and Juniper at the time Juniper filed suit. *Benitec*
25  *Australia*, 495 F.3d at 1344; *GAF Bldg. Materials Corp. v. Elk Corp. of Dallas*, 90 F.3d 479, 483 (Fed.
    Cir. 1996) ("[L]ater events cannot create jurisdiction where none existed at the time of filing.").
26  Moreover, even if Juniper had presented Altitude with the covenant not to sue before it initiated this
    action, Altitude's failure to sign that covenant could not, in itself, create a case or controversy between
27  Juniper and Altitude. *See Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1341 (Fed. Cir. 2008)
    ("[A] defendant's failure to sign a covenant not to sue is one circumstance to consider in evaluating the
28  totality of the circumstances, [but] it is not sufficient to create an actual controversy—some affirmative
    actions by the defendant will also generally be necessary.").